**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF NEW YORK**

| | |
|---|---|
| CHARLES DEMPSEY, individually, and L.D. by her father and natural guardian, CHARLES DEMPSEY, <br><br> Plaintiffs, <br><br> -against- <br><br> THE CITY OF ROCHESTER, a municipal entity, JAVIER ALGARIN, "JOHN DOE" RPD OFFICER RESPONSIBLE FOR TRAINING JAVIER ALGARIN, <br><br> Defendants. | PLAINTIFFS' OBJECTIONS AND MODIFICATIONS TO PROPOSED JURY INSTRUCTIONS <br><br> **CASE NO.: 19-cv-6780 (MJP)** |

**PLAINTIFFS' OBJECITONS TO DEFENDANTS PROPOSED JURY INSTRUCTIONS, AND PROPOSED MODIFICATIONS TO PLAINTIFFS' PROPOSED JURY INSTRUCTIONS**

# <u>TABLE OF CONTENTS</u>

TABLE OF CONTENTS.............................................................................................. i

OBJECTIONS TO DEFENDANTS' PROPOSED INSTRUCTIONS ......................................... 1

I.    UNREASONABLE SEARCH OF CURTILAGE (FOURTH AMENDMENT – § 1983): Objection to Defendants' Proposed Instruction Because "Exigent Circumstances" is an Affirmative Defense on which Defendants Bear the Burden of Proof ...................................... 1

   A.    The only question for the jury in this case is whether the "exigent circumstances" exception to the warrant requirement justified Defendant Algarin's entry into the Dempsey backyard—which is an affirmative defense................................................................. 1

   B.    Objection to Defendants' Legally Incorrect "Search and Seizure—Unreasonable Search of the Home" Instruction............................................................................ 4

II.    Objection to Defendants' Proposed Instruction on Monell / Municipal Liability ............. 7

III.    Objections to Defendants' Proposed Damages Instructions........................................ 11

   A.    Defendants' "Damages from Personal Property (the Dog)" instruction improperly limits damages for the unconstitutional seizure of Tesla to fair market value. .................... 11

   B.    Defendants' damages instruction is confusing and incomplete as to emotional distress damages, and risks improperly narrowing Plaintiffs' recoverable harms............................ 13

   C.    Defendants' proposed property-damages framing is also defective because it improperly excludes recoverable emotional distress caused by contemporaneous witnessing of Tesla's shooting and the fear for Plaintiffs' own safety—harms that are compensable under New York law and supported by Plaintiffs' proof....................................................... 13

   D.    Defendants' "sympathy" and "guesswork" admonitions are unnecessary and unbalanced given the contested issues of emotional and psychological injury. ................... 14

   E.    Defendants should not be permitted to argue—implicitly or explicitly—that Tesla-related emotional distress is categorically barred because a dog is "property."................... 14

   F.    Defendants' mitigation instruction should be limited and should not be permitted to operate as an improper "failure to treat" defense to emotional or psychological injury. ..... 15

   G.    Objection to Defendants' Proposed Nominal Damages Instruction ............................ 16

PROPOSED SELECT MODIFIED JURY INSTRUCTIONS .................................................... 19

I.    MODIFIED INSTRUCTION NO. 1: UNREASONABLE SEARCH OF CURTILAGE (FOURTH AMENDMENT – § 1983) (Against Officers Javier Algarin and Adam Gorman) 19

   A.    Overview................................................................................................ 19

   B.    Elements Defendants Must Prove on their Affirmative Defense of Exigent Circumstances .............................................................................................. 20

   C.    Plaintiffs Do Not Need to Prove Anything on this Claim ............................................ 21

   D.    Definition of Probable Cause....................................................................... 21

   E.    Exigent Circumstances............................................................................... 21

F.    Backtracking Alone Is Not an Exigent Circumstance ................................................. 22

G.    Personal Involvement.................................................................................................. 23

II.    MODIFIED INSTRUCTION NO. 7: MUNICIPAL LIABILITY – POLICY / CUSTOM OF UNLAWFUL ENTRIES ("BACKTRACKING") (Against the City of Rochester) (42 U.S.C. § 1983 – Fourth Amendment – Warrantless Entry Into the Curtilage)......................... 25

A.    Overview.................................................................................................................... 25

B.    What Plaintiffs Must Prove........................................................................................ 25

C.    Fourth Amendment Principles (Curtilage; Presumption; Exigent Circumstances as a Defense) ............................................................................................................................. 26

D.    What Counts as a City Policy, Custom, or Practice.................................................... 27

E.    Plaintiffs' Theory: "Backtracking" as a City Policy / Custom .................................... 28

1.    Moving Force / Causation.................................................................................. 29

2.    Verdict................................................................................................................ 30

III.    MODIFIED INSTRUCTION NO. 8: MUNICIPAL LIABILITY – FAILURE TO TRAIN / UNCONSTITUTIONAL POLICY OR CUSTOM REGARDING USE OF LETHAL FORCE AGAINST DOGS (Against the City of Rochester) (42 U.S.C. § 1983 – Fourth Amendment) ...................................................................................................................... 31

A.    Overview and Elements Plaintiffs Must Prove ........................................................... 31

B.    Fourth Amendment Standard – Seizure of a Dog ...................................................... 32

C.    Municipal Liability – What Counts as a Policy, Custom, or Practice ........................ 32

D.    Failure to Train or Supervise – Deliberate Indifference ............................................ 33

E.    Evidence Relevant to Deliberate Indifference and Policy or Custom ........................ 34

F.    Moving Force / Causation.......................................................................................... 36

G.    Verdict........................................................................................................................ 36

IV.    MODIFIED INSTRUCTION NO. 9: GENERAL DAMAGES PRINCIPLES .......... 37

A.    Compensatory Damages ............................................................................................. 37

B.    Punitive Damages ...................................................................................................... 40

V.    MODIFIED INSTRUCTION NO. 9A: DAMAGES FOR UNLAWFUL ENTRY / UNREASONABLE SEARCH (CURTILAGE) (42 U.S.C. § 1983 – Fourth Amendment) .... 41

VI.    MODIFIED INSTRUCTION NO. 9B: DAMAGES FOR CONSTITUTIONAL VIOLATIONS INVOLVING TESLA (DOG SEIZURE)........................................................ 43

VII.    MODIFIED INSTRUCTION NO. 9C: DAMAGES FOR UNLAWFUL SEIZURE OF CHARLES DEMPSEY (FOURTH AMENDMENT – § 1983)(Charles Dempsey v. Officer Javier Algarin) ...................................................................................................................... 44

VIII.    MODIFIED INSTRUCTION NO. 9D: DAMAGES FOR FAILURE TO INTERVENE (FOURTH AMENDMENT – § 1983) (Against Officer Adam Gorman Only) ....................... 45

IX.    MODIFIED INSTRUCTION NO. 9E: DAMAGES FOR TRESPASS (STATE LAW) (Against Officers Algarin and Gorman; City of Rochester via Respondeat Superior)............. 47

X.    REVISED MODIFIED INSTRUCTION NO. 9F: DAMAGES FOR ASSAULT (STATE LAW) (Charles Dempsey v. Officer Algarin; City of Rochester via Respondeat Superior).... 49

XI.    MODIFIED INSTRUCTION NO. 10: DAMAGES FOR PLAINTIFF CHARLES DEMPSEY ............................................................................................................................. 50

XII.    MODIFIED INSTRUCTION NO. 11: DAMAGES FOR PLAINTIFF LEONA DEMPSEY ............................................................................................................................. 52

XIII.    MODIFIED INSTRUCTION NO. 12: PUNITIVE DAMAGES (ALGARIN AND GORMAN ONLY) (Unlawful Entry and Search under 42 U.S.C. § 1983) ............................ 55

    A.    Purpose of Punitive Damages ........................................................................................ 55

    B.    When Punitive Damages May Be Awarded ................................................................. 55

    C.    Definitions...................................................................................................................... 56

    D.    Application to This Case................................................................................................ 56

       3.    Amount of Punitive Damages.................................................................................. 56

    E.    Relationship to Compensatory Damages ...................................................................... 57

XIV.    MODIFIED INSTRUCTION NO. 13: PUNITIVE DAMAGES — NEW YORK STATE LAW (TRESPASS) (Against Officers Javier Algarin and Adam Gorman Only) ...... 58

    A.    Purpose of Punitive Damages (State Law) ................................................................... 58

    B.    When Punitive Damages May Be Awarded for Trespass (State Law Standard).......... 58

    C.    Application to This Case (Trespass)................................................................................ 59

    D.    Burden of Proof............................................................................................................. 59

    E.    Amount of Punitive Damages ....................................................................................... 59

XV.    PROPOSED INSTRUCTION — RESPONDEAT SUPERIOR (STATE LAW ASSAULT AND TRESPASS) ............................................................................................... 60

## OBJECTIONS TO DEFENDANTS' PROPOSED INSTRUCTIONS

I. **UNREASONABLE SEARCH OF CURTILAGE (FOURTH AMENDMENT – § 1983): Objection to Defendants' Proposed Instruction Because "Exigent Circumstances" is an Affirmative Defense on which Defendants Bear the Burden of Proof**

   A. **The only question for the jury in this case is whether the "exigent circumstances" exception to the warrant requirement justified Defendant Algarin's entry into the Dempsey backyard—which is an affirmative defense**

In this case, the only question for the jury in this case is whether the "exigent circumstances" exception to the warrant requirement justified Defendant Javier Algarin's entry into the Dempseys' backyard, and that is an affirmative defense on which the Defendants bear the burden of Proof.

A fenced backyard attached to a home is considered curtilage. In this case, it is undisputed that the Dempsey back yard was "curtilage" entitled to the same Fourth Amendment protection as the home itself. As Judge Wolford noted in her summary judgment decision, "Defendants do not contest that Plaintiffs' fenced-in backyard was curtilage protected by the Fourth Amendment. (Dkt. 95-1 at 8)" ECF 104 p. 11.[1] This is a judicial admission. *Kregler v. City of New York*, 821 F. Supp. 2d 651, 656 (SDNY 2015, *aff'd*, 604 F. App'x 44 (2d Cir. 2015) ("Absent egregious circumstances, a distinct and formal admission made before, during, or even after a proceeding by an attorney acting in his professional capacity binds his client as a judicial admission."); *Hart v. RCI Hospitality Holdings, Inc.*, 09-CV-3043, 2015 WL 997683, at *4 n.5 (S.D.N.Y. Mar. 6, 2015) (Engelmayer, J.) (precluding Defendants from introducing any evidence or argument in contradiction of prior factual representations).

---

[1] Specifically, in their memorandum of law in opposition to Plaintiffs' motion for summary judgment at footnote 1 on page 8 of the pdf or numbered page 2 of the memorandum, Defendants state, "Defendants do not contest that the particular area was curtilage." ECF 95-1 at 2.

It is also undisputed that Defendants Algarin and Gorman entered the Dempsey back yard without a warrant or consent.

Thus, the only question is whether exigent circumstances existed to justify the warrantless entry. The Supreme Court has made clear that warrantless entry into a home or curtilage is "presumptively unreasonable," requiring both probable cause **and** an exigent circumstance. *Kirk v. Louisiana*, 536 U.S. 635, 638 (2002) (probable cause is first requirement of any exigent-circumstances entry).

The exigent circumstances exception to the warrant requirement is as an affirmative defense. See Answer to Second Amended Complaint, ECF 32 at ¶ 23. "[A] defendant asserting an affirmative defense bears the burden of proof with respect to that defense." *Cellco P'ship v. City of Rochester*, 719 F. Supp. 3d 256, 265 (W.D.N.Y. 2024), quoting *Barton Grp., Inc. v. NCR Corp.*, 796 F. Supp. 2d 473, 498 (S.D.N.Y. 2011), *aff'd*, 476 F. App'x 275 (2d Cir. 2012). "Before agents of the government may invade the sanctity of the home, the burden is on the government to demonstrate exigent circumstances that overcome the presumption of unreasonableness that attaches to all warrantless home entries." *Welsh v. Wisconsin*, 466 U.S. 740, 750 (1984). Thus, the "officers 'bear a heavy burden' to show that an exigency justified a warrantless entry." *Alexander v. City of Syracuse*, 132 F.4th 129, 147 (2d Cir. 2025), quoting *Chamberlain Estate of Chamberlain v. City of White Plains*, 960 F.3d 100, 106 (2d Cir. 2020); *McCardle v. Haddad*, 131 F.3d 43, 48 (2d Cir. 1997) ("If it is established that the place or object subjected to the warrantless search is one in which the plaintiff has a reasonable expectation of privacy, the defendant has the burden of showing that the search was valid because it fell within one of the exceptions to the warrant requirement."); *Harris v. O'Hare*, 770 F.3d 224, 226, 229 (2d Cir. 2014) (noting defendants

"added the affirmative defense of exigent circumstances" as an exception to the Fourth Amendment's warrant requirement).

As recently summarized by the Colorado Court of Appeals:

> "Finally, though ample state law supports characterizing an officer's claim of legal justification as an affirmative defense, most federal circuits that have analyzed the issue in the context of a civil rights claim filed under 42 U.S.C. § 1983 — including the Tenth Circuit Court of Appeals — have done the same. *See, e.g.*, *Armijo ex rel. Armijo Sanchez v. Peterson*, 601 F.3d 1065, 1070 (10th Cir. 2010) (concluding that, in a § 1983 case, the officer bears the burden of establishing a warrant exception existed to justify a warrantless entry); *Mascorro v. Billings*, 656 F.3d 1198, 1205 (10th Cir. 2011) (In a § 1983 action, "[t]he burden is on the government to demonstrate the existence of exigent circumstances" justifying a warrantless entry.).

> ¶ 27 The Second, Third, Sixth, and Ninth Circuit Courts of Appeals also follow the majority view that, in the context of a § 1983 claim, the burden shifts to the government to prove the affirmative defense of exigent circumstances justifying a warrantless search or seizure. *See McCardle v. Haddad*, 131 F.3d 43, 48 (2d Cir. 1997) ("If it is established that the place or object subjected to the warrantless search is one in which the plaintiff has a reasonable expectation of privacy, the defendant has the burden of showing that the search was valid because it fell within one of the exceptions to the warrant requirement."); *Parkhurst v. Trapp*, 77 F.3d 707, 711 (3d Cir. 1996) ("To excuse the absence of a warrant, the burden rests on the State to show the existence of ... exceptional situations."); *Hardesty v. Hamburg Township*, 461 F.3d 646, 655 (6th Cir. 2006) ("The government bears the burden of proving that exigent circumstances such as a medical emergency existed to justify a warrantless search."), *abrogated on other grounds by*, *Florida v. Jardines*, 569 U.S. 1, 133 S.Ct. 1409, 185 L.Ed.2d 495 (2013); *Hopkins v. Bonvicino*, 573 F.3d 752, 764 (9th Cir. 2009) (recognizing that, "as with other exceptions to the warrant requirement, the [g]overnment bears the burden of demonstrating that the search at issue meets the[ ] parameters" of the emergency exception (citation omitted)).

> ¶ 28 We therefore conclude that the court correctly stated the law by instructing the jury that the reasonableness of a warrantless search in a section 13-21-131 action is an affirmative defense that the

defendant has the burden of proving by a preponderance of the evidence."

*Mosley v. Davis*, 2025 COA 80, 2025 WL 2798880 at *5-6 (October 2, 2025).

Thus, in this case, the only question that should go to the jury on Plaintiffs' claim for UNREASONABLE SEARCH OF CURTILAGE (FOURTH AMENDMENT – § 1983) is whether Defendants met their burden of proof to demonstrate probable cause to believe (1) there was contraband in the Dempseys' backyard **and** (2) that exigent circumstances existed to justify the immediate warrantless entry into the property to prevent immediate loss or destruction of contraband.

### B. Objection to Defendants' Legally Incorrect "Search and Seizure— Unreasonable Search of the Home" Instruction

Initially, Plaintiffs objection to Defendants' proposed "Unreasonable Search of [the] home" instruction because it ignores the fact that "exigent circumstances" is an affirmative defense for which Defendants have the burden of proof.

Plaintiffs also object to Defendants' proposed "Unreasonable Search of [the] home" instruction insofar as it (1) assigns the issue as though Plaintiffs must affirmatively disprove any justification from the outset—"The burden is on Plaintiff [name] to prove that the search was unreasonable," and (2) adds the legally incorrect sentence: "If you determine that Defendants lacked a warrant, consent, and exigent circumstances, you may still determine that any search was reasonable." Both statements misstate governing Fourth Amendment principles for warrantless entry into a home or curtilage and would mislead the jury in a case concerning warrantless entry into fenced curtilage, where the only question is whether Defendants met their burden of proof on their affirmative defense of the exigent circumstances exception to the warrant requirement.

First, Defendants' "still reasonable" sentence is wrong as a matter of law. Warrantless entry into a home (and the home's curtilage) is "presumptively unreasonable." *Kentucky v. King*, 563 U.S. 452, 459 (2011); *United States v. Simmons*, 661 F.3d 151, 156–57 (2d Cir. 2011). The Fourth Amendment's "chief evil" is "physical entry of the home," *Payton v. New York*, 445 U.S. 573, 585–86 (1980), and the government may not justify a warrantless home/curtilage intrusion with an undefined, free-floating "reasonableness" determination once the jury finds no warrant and no recognized exception. In particular, where Defendants invoke exigent circumstances, probable cause is a prerequisite: a warrantless entry based on exigency requires both probable cause and an exigent circumstance. *Kirk v. Louisiana*, 536 U.S. 635, 638 (2002) (per curiam). "To benefit from the exception, an officer must have probable cause to believe an exigency exists." *Alexander v. City of Syracuse*, 132 F.4th 129, 147 (2d Cir. 2025). Defendants' "still reasonable" sentence would improperly permit the jury to uphold a warrantless entry in this case even if they find that Defendants failed to demonstrate exigent circumstances—exactly the opposite of the presumption and exception framework set out in *King*, *Simmons*, *Payton*, and *Kirk*. Thus, the Court must reject Defendants' proposed framework.

Defendants' reliance on *United States v. Lovelock*, 170 F.3d 339, 343–44 (2d Cir. 1999), does not support their proposed language. *Lovelock* arose in a criminal context involving execution of an arrest warrant and the reasonableness of officers' belief about the presence of the suspect inside the residence; it did not announce any rule that a home/curtilage entry may be deemed "reasonable" where there was no warrant and no applicable exception. *Lovelock* is completely inapplicable to cases like this where there was no arrest or search warrant justifying entry into the property.

Second, Defendants' burden statement is incomplete and misleading because it omits the controlling presumption and burden-shifting structure applicable to their affirmative defense of exigent circumstances. In a § 1983 unlawful entry/unreasonable search case, the Second Circuit holds that warrantless entry is presumptively unreasonable and that the exigent circumstances exception is an affirmative defense for which the Defendants bear the burden of proof. *Alexander v. City of Syracuse*, 132 F.4th 129, 147 (2d Cir. 2025) ("officers 'bear a heavy burden' to show that an exigency justified a warrantless entry," quoting *Chamberlain Estate of Chamberlain v. City of White Plains*, 960 F.3d 100, 106 (2d Cir. 2020); *See also Harris v. O'Hare*, 770 F.3d 224, 226, 229 (2d Cir. 2014) (noting defendants "added the affirmative defense of exigent circumstances" as an exception to the Fourth Amendment's warrant requirement); *Cellco P'ship v. City of Rochester*, 719 F. Supp. 3d 256, 265 (W.D.N.Y. 2024)("[A] defendant asserting an affirmative defense bears the burden of proof with respect to that defense," quoting *Barton Grp., Inc. v. NCR Corp.*, 796 F. Supp. 2d 473, 498 (S.D.N.Y. 2011), *aff'd*, 476 F. App'x 275 (2d Cir. 2012)).

Defendants' instruction—by simply stating the "burden is on Plaintiff"—is exactly backwards, attempting to shift the burden to the Plaintiffs, when they have the burden of proof on their affirmative defense of exigent circumstances to justify the nonconsensual warrantless entry.

**Relief requested.** Plaintiffs respectfully request that the Court instruct the (1) reject Defendants' "still reasonable" framework as contrary to well settled law, (2) reject Defendants framework, as it ignores the fact that exigent circumstances is an affirmative defense that Defendants bear the burden to prove at trial, and (3) instead use Plaintiffs' proposed Modified Instruction No. 1, below.

## II. <u>Objection to Defendants' Proposed Instruction on Monell / Municipal Liability</u>

Plaintiffs object to Defendants' proposed municipal-liability charge because it materially misstates and improperly narrows the Monell claims that remain for trial, and because it contains legal errors that conflict with controlling Second Circuit authority and Judge Wolford's summary-judgment decision in this case.

First, Defendants' proposed *Monell* instruction ignores Plaintiffs' distinct municipal-liability claim based on the City's policy, custom, and practice of unlawful entries into the curtilage through "backtracking." Plaintiffs have pleaded and pursued two separate *Monell* theories: (1) the "backtracking" *Monell* claim—i.e., that the City maintained and permitted an unconstitutional practice of entering residential curtilage without a warrant, consent, or an exigency for investigative purposes to retrace a suspect's route and recover discarded contraband; and (2) the dog-encounter *Monell* claim, including the City's failure to train/supervise and its customs/policies leading to the unconstitutional seizure of Tesla. Defendants' municipal-liability instruction, however, is drafted entirely around the dog-shooting/failure-to-train theory, and frames municipal liability solely through the lens of "unreasonable seizures of pet dogs," "dog encounters," and a pattern-of-similar-violations requirement. By omitting any instruction on the backtracking policy/custom claim, Defendants' proposal would effectively remove that *Monell* theory from the jury's consideration despite its centrality to the unconstitutional entry that occurred here and despite the Court's determination that triable issues exist as to the City's liability. A *Monell* instruction that fails to present the jury with the elements of Plaintiffs' backtracking claim is legally improper and prejudicial, and it would mislead the jury into believing municipal liability is limited to a single theory of failure to train regarding dog encounters.

Second, Defendants' statement of *Monell* law is substantively incorrect because it improperly requires Plaintiffs to identify and prove deliberate indifference by a "municipal policymaker," and it suggests municipal liability depends on the deliberate indifference of a discrete individual decisionmaker. That framing conflicts with the governing principles applied by Judge Wolford at summary judgment in this case. In denying summary judgment on Plaintiffs' municipal-liability theory, Judge Wolford expressly rejected the premise that Plaintiffs were required to name a specific individual policymaker within the Rochester Police Department, holding that Plaintiffs were **not** required to do so as a matter of law. *Dempsey v. City of Rochester*, 761 F. Supp. 3d 607 (W.D.N.Y. 2025). That ruling accords with the Supreme Court's *Monell* jurisprudence recognizing that municipal liability may be established by showing that the municipality itself—through its policies, customs, training failures, supervision failures, or other institutional choices—caused the constitutional violation, even where plaintiffs cannot identify a particular named official who personally made the unconstitutional policy choice. Defendants' instruction, which conditions liability on proof that "a municipal policymaker was deliberately indifferent," and which further requires proof that a policymaker "knew or should have known" and "allowed [the custom] to continue," misstates Plaintiffs' burden and invites a verdict for the City based on an erroneous legal requirement that Plaintiffs identify and prove deliberate indifference by a specific official. In short, Defendants' instruction improperly converts Monell into a claim that requires Plaintiffs to find and prove the subjective state of mind of a particular "policymaker," when the law—applied by Judge Wolford in this case—permits the jury to treat the City itself as the relevant policymaking entity and to assess municipal liability based on the City's institutional policy/custom/training choices and their causal role in the constitutional deprivation. *Id.*

Third, Defendants' proposed *Monell* instruction improperly narrows Plaintiffs' failure-to-train theory by imposing rigid and legally unsupported elements, including a categorical requirement that Plaintiffs prove a "pattern of similar constitutional violations," and that the City "knew that it was highly predictable that unreasonable seizures of pet dogs would occur without more training." That formulation is not a neutral statement of law; it is an advocacy-driven version that attempts to heighten Plaintiffs' burden and foreclose liability unless Plaintiffs prove a particular number and type of prior dog-shooting incidents that Defendants label "similar." It is also inconsistent with how Judge Wolford analyzed municipal liability at summary judgment in this case, including her rejection of arguments that attempted to minimize the training need by reference to the "percentage" of residents who would experience the relevant police encounter. *Dempsey*, 761 F. Supp. 3d 607 (W.D.N.Y. 2025) (relying on *City of Canton v. Harris*, 489 U.S. 378 (1989), and explaining that the proper inquiry is whether the City's officers were certain to confront situations requiring constitutionally constrained choices and whether the need for training was obvious in that context). Defendants' proposed charge would improperly shift the jury away from the governing causation and deliberate-indifference framework and toward a "numbers game" in which liability exists only if Plaintiffs prove prior dog seizures that a jury deems unreasonable. That is not the governing standard and would mislead the jury.

Fourth, Plaintiffs object to Defendants' reliance on, citation to, and incorporation of *Cox v. City of Rochester*, No. 22-cv-6207, 2025 WL 50340 (W.D.N.Y. Jan. 8, 2025), in Defendants' *Monell* instruction. Defendants use *Cox* as the foundation for propositions that heighten the legal threshold for municipal liability—such as requiring proof that a training program must be "incredibly deficient," and requiring proof that "other dog seizures occurred and they were unreasonable" to establish a pattern. Those propositions conflict with the controlling analysis and

holdings in Judge Wolford's summary-judgment decision in this case, which governs the issues to be tried and the legal framework the jury must apply. *Dempsey*, 761 F. Supp. 3d 607 (W.D.N.Y. 2025). Whatever persuasive weight *Cox* might have in other contexts, it cannot be used to instruct the jury in a way that is inconsistent with this Court's rulings on the *Monell* theories and proof in this case. In addition, Defendants' selective reliance on *Cox* improperly imports case-specific reasoning from a separate action into an instruction that must neutrally reflect the governing *Monell* standards and the triable issues as defined by this Court. The Court should therefore reject any instruction language derived from *Cox* that conflicts with Judge Wolford's decision in this case and should preclude Defendants from presenting *Cox* as a controlling statement of *Monell* law to the jury.

For all these reasons, Defendants' proposed *Monell* instructions should be rejected. They improperly omit the backtracking Monell claim, misstate the law by requiring proof tied to an identified individual policymaker, improperly heighten Plaintiffs' burden through rigid pattern language, and rely on *Cox* in a manner directly inconsistent with Judge Wolford's summary-judgment ruling that governs the Monell claims and theories in this case.

### III. Objections to Defendants' Proposed Damages Instructions

#### A. Defendants' "Damages from Personal Property (the Dog)" instruction improperly limits damages for the unconstitutional seizure of Tesla to fair market value.

Defendants propose that if Plaintiffs prove a total loss of their dog, damages are limited to Tesla's "fair market value … at the time of the incident," and if not total loss, the measure is the before-and-after difference in fair market value.

That framing is legally incomplete and misleading in a § 1983 case involving a Fourth Amendment seizure. For Plaintiffs' federal claims, federal law—not state-law "property damage" rules—governs the measure of damages for constitutional torts. Under Supreme Court precedent, compensatory damages under § 1983 are designed to compensate for *actual injury* caused by the constitutional violation, including mental and emotional distress actually caused by the violation. *Carey v. Piphus*, 435 U.S. 247, 264 (1978). And the Court has made clear that § 1983 compensatory damages may include "mental and emotional distress" so long as they are proven, and may not be reduced to abstract or nominal valuations where the evidence shows actual injury. *Memphis Cmty. Sch. Dist. v. Stachura*, 477 U.S. 299, 307–08 (1986). Accordingly, Defendants' "fair market value only" framing for Tesla's death is improper because it suggests to the jury that the only legally compensable harm flowing from the unconstitutional seizure is property value— when federal law permits recovery of proven emotional distress and related harms proximately caused by the seizure.

Defendants' "fair market value only" framing is also incorrect under New York law and would improperly restrict the jury's assessment of Tesla-related damages on Plaintiffs' state-law claims.

11

Defendants' damages framing also misstates New York law. In *DeBlase v. Hill*, the court recognized that a companion dog is not treated as merely fungible property for damages purposes, and held that an owner may recover pet-related economic damages beyond a bare "fair market value" figure, including the dog's intrinsic value, any post-incident veterinary costs, and reasonable burial/cremation/memorialization costs. *DeBlase v. Hill*, 239 N.Y.S.3d 770, 798 (Sup. Ct. Kings Cnty. 2025).

In addition, New York courts recognize that a companion animal has an "actual value to the owner," and that recoverable damages may include, among other things, the dog's loss of companionship and protective value. *Brousseau v. Rosenthal*, 110 Misc. 2d 1054, 1055–58 (N.Y. Civ. Ct. 1980).

Critically, *DeBlase* also confirms that New York law permits recovery of emotional distress damages under the zone-of-danger rule where the plaintiff is placed in reasonable fear for their own safety and, while in that zone of danger, contemporaneously witnesses the dog being killed. Specifically, the court held that plaintiffs may recover for "emotional distress resulting from witnessing [the dog's] death and fear for [their] own safety," i.e., emotional distress arising from (a) exposure to danger and (b) contemporaneous observation of the dog being shot and killed. *DeBlase*, 239 N.Y.S.3d at 792–94. Accordingly, Defendants' attempt to confine the jury to a rigid "market value only" approach improperly excludes categories of damages that are recoverable under New York law and supported by the evidence in this case.

.

Accordingly, Defendants' proposed instruction should be rejected or modified to avoid erroneously limiting Tesla-related damages to "fair market value."

**B.**  **Defendants' damages instruction is confusing and incomplete as to emotional distress damages, and risks improperly narrowing Plaintiffs' recoverable harms.**

Although Defendants' general damages charge acknowledges that compensatory damages include "physical and mental and emotional pain and suffering" for certain claims, it then segregates trespass and the dog seizure into "reasonable value of property damaged or destroyed," which—given the facts of this case—invites the jury to disregard the emotional harm associated with Tesla's shooting and death.

This is inconsistent with the governing federal damages framework under *Carey* and *Stachura*, which permits proven emotional distress damages for constitutional violations, including Fourth Amendment violations, so long as causation and actual injury are established.

Defendants' framing also conflicts with the basic remedial premise that § 1983 damages must be sufficient to compensate for the full scope of injury proximately caused by the constitutional deprivation, including intangible harms. *Stachura*, 477 U.S. at 307.

**C.**  **Defendants' proposed property-damages framing is also defective because it improperly excludes recoverable emotional distress caused by contemporaneous witnessing of Tesla's shooting and the fear for Plaintiffs' own safety—harms that are compensable under New York law and supported by Plaintiffs' proof.**

New York courts recognize that plaintiffs may recover emotional distress resulting from witnessing the dog's death and fear for their own safety, i.e., emotional distress arising from (a) exposure to danger and (b) contemporaneous observation of the dog being shot and killed. *DeBlase*

*v. Hill*, 239 N.Y.S.3d 770, 792–94 (Sup. Ct. Kings Cnty. 2025). Defendants' proposed instruction improperly invites the jury to treat Tesla's death as a purely economic "property damage" issue and would incorrectly foreclose recovery for these proven emotional harms.

### D. Defendants' "sympathy" and "guesswork" admonitions are unnecessary and unbalanced given the contested issues of emotional and psychological injury.

Defendants' instruction tells the jury that awards must not be based on "speculation, sympathy, or guesswork."

While courts may properly instruct juries to base damages on the evidence, the inclusion of "sympathy" and the overall emphasis risks improperly signaling that emotional-distress testimony is inherently suspect or speculative. This is particularly problematic where Plaintiffs seek recovery for fear, trauma, humiliation, grief, and psychological harm—categories expressly recognized as compensable actual injury in § 1983 damages doctrine when proven. *Carey*, 435 U.S. at 264; *Stachura*, 477 U.S. at 307. It is even more prejudicial here because Plaintiffs seek recovery for emotional distress from both exposure to danger and contemporaneous witnessing of Tesla being shot and killed—harms recognized as compensable under New York law. *DeBlase*, 239 N.Y.S.3d at 792–94.

### E. Defendants should not be permitted to argue—implicitly or explicitly—that Tesla-related emotional distress is categorically barred because a dog is "property."

In a § 1983 Fourth Amendment seizure claim, Plaintiffs may recover for actual injury proximately caused by the unconstitutional seizure, including proven emotional distress. *Carey*, 435 U.S. at 264; *Stachura*, 477 U.S. at 307–08. And under New York law, courts recognize that a

companion dog has an actual value to the owner that may include psychological trauma and the dog's companionship/protective value. *Brousseau*, 110 Misc. 2d at 1055–58. Any instruction or argument that treats Tesla solely as fungible property and forecloses these recoverable harms is legally incorrect and misleading.

At minimum, Plaintiffs request that the Court reserve decision on any instruction that would categorically limit Tesla-related damages until after the close of evidence. If the proof supports Tesla's actual value to Plaintiffs—including companionship/protective value and psychological trauma—and supports emotional distress from contemporaneous witnessing and fear for safety, the jury must be instructed consistently with *Carey*, *Stachura*, *Brousseau*, and *DeBlase*, rather than a rigid "fair market value only" framework.

### F. <u>Defendants' mitigation instruction should be limited and should not be permitted to operate as an improper "failure to treat" defense to emotional or psychological injury.</u>

Defendants propose a broad mitigation charge (including the statement that "an injured plaintiff may not sit idly by") and then state that "defendants have the burden of proving the damages that the plaintiffs could have mitigated." Plaintiffs object to this instruction and request that it be omitted in its entirety because it is inapplicable to the emotional and psychological damages at issue in this case and would risk confusing the jury into improperly evaluating Plaintiffs' mental-health injuries through a "failure to seek treatment" lens.

Plaintiffs' claimed injuries include emotional distress and psychological harm proximately caused or aggravated by Defendants' conduct, and those damages are compensable under § 1983 based on proof of actual injury and causation. *Carey v. Piphus*, 435 U.S. 247, 264 (1978); *Memphis Cmty. Sch. Dist. v. Stachura*, 477 U.S. 299, 307 (1986). A generalized mitigation charge—

particularly language suggesting a plaintiff "may not sit idly by"—is inappropriate here because it invites the jury to speculate that psychological injury is non-compensable unless Plaintiffs sought immediate treatment, or that psychiatric hospitalization, therapy, or other mental-health care is "self-inflicted." That is not the law, and it would improperly shift the jury's attention away from proximate causation and actual injury.

In any event, even if a mitigation instruction could theoretically apply in some limited respect, there is no evidence supporting such a charge in this case. Plaintiffs in fact immediately sought treatment following the incident. Charles Dempsey entered therapy promptly and has been in and out of treatment since the incident, with pauses attributable to the COVID-19 pandemic. Leona Dempsey likewise immediately sought treatment and later required approximately a year of psychiatric hospitalization. On these facts, a mitigation charge would serve no legitimate purpose and would only risk confusing the jury.

At a minimum, because mitigation is an issue on which Defendants bear the burden of proof, Plaintiffs request that the Court reserve decision on whether any mitigation instruction is warranted until after the close of evidence. If Defendants fail to introduce competent evidence from which a reasonable jury could find that Plaintiffs failed to take reasonable steps to mitigate damages, then the mitigation charge should not be given.

### G. Objection to Defendants' Proposed Nominal Damages Instruction

Plaintiffs object to Defendants' proposed instruction permitting the jury to award nominal damages (e.g., $1.00) on Plaintiffs' Fourth Amendment and related § 1983 claims. A nominal-damages instruction is not required, and in the posture of this case it is improper and prejudicial because it invites the jury to return an internally inconsistent verdict—finding a constitutional

violation while awarding no real compensation—despite undisputed evidence that Plaintiffs suffered actual injury if liability is found.

The Second Circuit has made clear that where the jury's liability finding necessarily reflects acceptance of the plaintiff's evidence of injury, the plaintiff is "entitled as a matter of law to some compensation," and it is error to instruct that nominal damages are permissible. *Kerman v. City of New York*, 374 F.3d 93, 124 (2d Cir. 2004) (holding "it was error to charge the jury that an award of nominal damages was permissible," and quoting *Wheatley v. Beetar*, 637 F.2d 863, 863 (2d Cir. 1980)); *Wheatley*, 637 F.2d at 865 (reversing nominal damages award where jury necessarily credited plaintiff's evidence of harm). As courts in this Circuit recognize, a nominal-damages charge is typically included for the plaintiff's benefit, not as a defense tool to dilute compensation, and the plaintiff may properly object to its inclusion where it would mislead the jury. *Vilkhu v. City of New York*, No. 06-CV-2095 (CBA)(VVP), 2009 WL 537495, at *5 (E.D.N.Y. Mar. 2, 2009), aff'd, 372 F. App'x 222 (2d Cir. 2010).

Here, if the jury finds that Officers Algarin and/or Gorman violated the Fourth Amendment by unlawfully entering Plaintiffs' fenced curtilage without a warrant or consent and without a valid exigent-circumstances justification—and/or by unlawfully seizing Tesla—Plaintiffs are necessarily entitled to compensatory damages for actual injury proximately caused by those violations, including emotional distress and the loss and destruction of property. In this case, damages are not hypothetical, abstract, or speculative: the record will permit the jury to award compensation for the concrete harms Plaintiffs suffered if liability is found. Allowing a nominal damages option improperly suggests that the jury may find unconstitutional conduct yet award

only $1.00, which is precisely the kind of inconsistent result *Kerman* and *Wheatley* hold should not be sanctioned by the charge.

Accordingly, Plaintiffs respectfully request that the Court decline to charge nominal damages, and instead instruct the jury that if it finds liability on any § 1983 claim, it must award damages that fairly compensate Plaintiffs for the actual injuries proven to have been caused by the constitutional violation.

**PROPOSED SELECT MODIFIED JURY INSTRUCTIONS**

## I.   MODIFIED INSTRUCTION NO. 1: UNREASONABLE SEARCH OF CURTILAGE (FOURTH AMENDMENT – § 1983) (Against Officers Javier Algarin and Adam Gorman)

### A.  Overview

The Fourth Amendment protects the home and its immediately surrounding area, known as the "curtilage," against warrantless physical entry by police. The United States Supreme Court has held that the curtilage "is part of the home itself for Fourth Amendment purposes," and that officers may not physically intrude into that area without a warrant or a valid exception. *Florida v. Jardines*, 569 U.S. 1, 6–7 (2013) (curtilage is part of the home; warrantless entry impermissible without consent or exigency).

A fenced backyard attached to a home is considered curtilage. In this case, it is undisputed that the Dempsey back yard was "curtilage" entitled to the same Fourth Amendment protection as the home itself. It is also undisputed that Defendant Algarin entered the Dempsey backyard to conduct a search for contraband without a warrant or consent.

The Supreme Court has made clear that warrantless entry into a home or curtilage is "presumptively unreasonable," requiring both probable cause **and** an exigent circumstance. *Kirk v. Louisiana*, 536 U.S. 635, 638 (2002) (probable cause is first requirement of any exigent-circumstances entry).

Here, Defendants assert the affirmative defense of "exigent circumstances" to justify Algarin's nonconsensual warrantless entry into the Dempsey backyard. Because "exigent circumstance" is an affirmative defense, the Defendants—not the Plaintiffs—have the burden to

demonstrate that an exigency justified the nonconsensual warrantless entry into the Dempsey backyard. *Alexander v. City of Syracuse*, 132 F.4th 129, 147 (2d Cir. 2025)

### B. <u>Elements Defendants Must Prove on their Affirmative Defense of Exigent Circumstances</u>

To justify a warrantless entry based on exigent circumstances in this case, Defendants must prove by a preponderance of the evidence that at the moment that Defendant Algarin entered the Dempsey back yard, he had both:

1. Probable cause to believe that contraband was located in the Dempsey back yard, **<u>and</u>**

2. Probable cause to believe that if he did not immediately enter the Dempsey back yard, then the contraband would be immediately lost or destroyed.

*Kirk v. Louisiana*, 536 U.S. 635, 638 (2002); *Alexander v. City of Syracuse*, 132 F.4th 129, 147 (2d Cir. 2025).

If Defendants do not show by a preponderance of the evidence that there was probable cause to believe contraband was located in the Dempsey backyard, then you must find for Plaintiffs on this claim.

Even if Defendants prove they had probable cause to believe that contraband was located in the Dempsey backyard, if they fail to show by a preponderance of the evidence that if they did not immediately enter the Dempsey back yard that contraband would be immediately lost or destroyed, then they failed to meet their burden and you must find for Plaintiffs on this claim.

If you find that Defendants had time to obtain a warrant prior to entering the Dempsey yard, then exigent circumstances did not exist, and you must find in favor of the Plaintiffs.

If you find that Defendants had time to seek Mr. Dempsey's consent prior to entering the Dempsey yard, then exigent circumstances did not exist, and you must find in favor of the Plaintiffs.

### C.  **Plaintiffs Do Not Need to Prove Anything on this Claim**

Because the warrantless entry into their backyard was presumptively unlawful, and because Defendants have the burden of proof to justify the warrantless entry under the exigent circumstances exception to the warrant requirement, Plaintiffs do not have the burden to demonstrate that the entry was not justified by exigent circumstances.

However, if you find that Plaintiffs demonstrated by a preponderance of the evidence that Defendants had time to seek Mr. Dempsey's consent prior to entering the Dempsey yard, then exigent circumstances did not exist, and you must find in favor of the Plaintiffs.

### D.  **Definition of Probable Cause**

Probable cause requires specific, objective facts that would lead a reasonable officer to believe that contraband was located in the Dempsey backyard.

A mere possibility that evidence *might* be somewhere in a backyard does not constitute probable cause. The Supreme Court has emphasized that probable cause is based on concrete facts known to the officer at the moment of the intrusion, not on generalized suspicion or speculation. See *Kirk*, 536 U.S. at 638.

### E.  **Exigent Circumstances**

Even if probable cause exists, officers may enter without a warrant only if a true emergency made obtaining a warrant or Mr. Dempsey's consent impractical. The Supreme Court has made

clear that exigent circumstances require an objectively urgent need—such as a threat to life, an ongoing emergency, or imminent destruction of evidence. *Lange v. California*, 594 U.S. 295, 301–02 (2021) (exigent circumstances require true emergency; case-specific, totality-of-the-circumstances analysis).

Where, as here, "an officer invokes the exigent circumstances exception to justify a warrantless entry to search for and preserve evidence, the … threatened destruction of evidence must be 'imminent.'" *Alexander v. City of Syracuse*, 132 F.4th 129, 148 (2d Cir. 2025). Thus, "the exigent circumstances exception typically applies when an officer has reason to believe evidence [inside a home or its curtilage] is being destroyed or removed *in real time." Id.*

### F.   Backtracking Alone Is Not an Exigent Circumstance

Once an exigency like a "hot pursuit" ends, "any additional warrantless search or seizure "is no longer permissible." *Alexander v. City of Syracuse*, 132 F.4th 129, 147 (2d Cir. 2025)

Here, when Officer Algarin entered the Dempsey backyard, the suspects had already been detained, and the "hot pursuit" had concluded. Thus, the pursuit of the suspect through the Dempsey yard cannot justify Algarin's entry into the yard; instead, Defendants must prove by a preponderance the evidence that some other exigency existed to justify the warrantless entry.

Officers may not enter private property merely to search for potential contraband based on mere suspicion or a hunch; instead they must have probable cause to believe the contraband is present and that immediate entry was necessary to prevent the loss or destruction of the contraband. *Harris v. O'Hare*, 770 F.3d 224, 236 (2d Cir. 2014) ("Thus, mere suspicion or probable cause for belief of the presence of a firearm does not, on its own, *create* urgency."); *See Simmons,* 661 F.3d

at 157–58 ("Of course, *absent such an urgency,* the gun alone did not justify the officers' search of the bedroom.") (emphasis added); *United States v. Johnson,* 22 F.3d 674, 680 (6th Cir.1994) ("The mere presence of firearms does not create exigent circumstances.").

Thus, if Officers Algarin or Gorman entered Plaintiffs' backyard merely to retrace the suspects' route or to look for potentially discarded contraband, without specific facts establishing probable cause (1) to believe that contraband was in fact located in the Dempsey backyard and (2) to believe that without immediate entry, the contraband would be immediately lost or destroyed, then the entry was unconstitutional and you must find in favor of the Plaintiffs on this claim.

### G.  Personal Involvement

A defendant officer is liable if he personally entered the curtilage unlawfully, or if he directed, encouraged, or assisted another officer in doing so. Direct physical entry is not required— affirmative participation or instruction is enough.

Plaintiffs allege that both Defendants Algarin and Gorman unlawfully entered the Dempsey backyard. Plaintiffs also allege that Defendant Gorman encouraged Algarin to unlawfully enter the Dempsey backyard by directing him to "backtrack" through the yard.

If you find that Defendant Algarin unlawfully entered the Dempsey backyard, then you must find in Plaintiffs' favor against Defendant Algarin on this claim.

If you find that Defendant Gorman unlawfully entered the Dempsey backyard, then you must find in Plaintiffs' favor against Defendant Gorman on this claim.

If you find that Defendant Gorman directed or encouraged Defendant Algarin to unlawfully enter the Dempsey backyard, then you must find in Plaintiffs' favor against Defendant Gorman on this claim.

II. **MODIFIED INSTRUCTION NO. 7: MUNICIPAL LIABILITY – POLICY / CUSTOM OF UNLAWFUL ENTRIES ("BACKTRACKING") (Against the City of Rochester) (42 U.S.C. § 1983 – Fourth Amendment – Warrantless Entry Into the Curtilage)**

A. **Overview**

Plaintiffs Charles and Leona Dempsey claim that the City of Rochester is liable under federal law because the Rochester Police Department maintained a policy, custom, or practice known as "backtracking"—entering residential yards or other curtilage to retrace a suspect's path and search for discarded contraband—without a warrant and without a valid exception to the warrant requirement. Plaintiffs claim that this City policy/custom caused Officer Algarin's warrantless entry into the curtilage of their home.

Municipal liability under § 1983 is sometimes called "Monell liability," after the Supreme Court case that recognized it. A City is not automatically liable for every unconstitutional act committed by one of its officers. The City is liable only if Plaintiffs prove that the constitutional violation was caused by a City policy, custom, or practice.

B. **What Plaintiffs Must Prove**

To succeed on this municipal-liability claim against the City of Rochester, Plaintiffs must prove by a preponderance of the evidence all of the following:

1. **A Fourth Amendment violation:** that Officer Algarin entered the curtilage of Plaintiffs' home without a warrant and without consent, and that Defendants have not proven a valid exception to the warrant requirement;

25

2. **A City policy/custom/practice:** that the City had an official policy, custom, or practice of "backtracking" that resulted in warrantless entries into curtilage in circumstances like those presented here; and

3. **Causation ("moving force"):** that the City's policy/custom/practice was the moving force behind Officer Algarin's unconstitutional entry—that is, the policy/custom directly caused the entry.

If Plaintiffs fail to prove any one of these elements, your verdict must be for the City. If Plaintiffs prove all three, your verdict must be for Plaintiffs on this claim.

## C. <u>Fourth Amendment Principles (Curtilage; Presumption; Exigent Circumstances as a Defense)</u>

The Fourth Amendment protects people from unreasonable searches and protects the home and its curtilage—the area immediately surrounding and associated with the home. The curtilage is treated as part of the home for Fourth Amendment purposes.

A "search" occurs when officers intrude upon a person's reasonable expectation of privacy or when they trespass upon the home or its curtilage to obtain information. *Florida v. Jardines*, 569 U.S. 1, 6–7 (2013); *United States v. Jones*, 565 U.S. 400, 404–05 & n.5 (2012).

Warrantless entry into the home or its curtilage is presumptively unreasonable. *Kentucky v. King*, 563 U.S. 452, 459 (2011); *United States v. Simmons*, 661 F.3d 151, 156–57 (2d Cir. 2011).

Because warrantless home/curtilage entry is presumptively unreasonable, Defendants may avoid liability only if they establish a recognized exception to the warrant requirement. In this case, Defendants contend that Officer Algarin's entry was justified by the **exigent circumstances**

exception. Under that exception, a warrantless entry into the home/curtilage is lawful only if supported by **both** probable cause and exigent circumstances. *Kirk v. Louisiana*, 536 U.S. 635, 638 (2002) (per curiam); *Harris v. O'Hare*, 770 F.3d 224, 231–35 (2d Cir. 2014). To benefit from the exception, an officer must have probable cause to believe an exigency exists. *Alexander v. City of Syracuse*, 132 F.4th 129, 147 (2d Cir. 2025).

Exigent circumstances justify entry only where officers face a true "now or never" emergency, and the exception is strictly limited. *Lange v. California*, 594 U.S. 295, 301–02 (2021); *Brigham City v. Stuart*, 547 U.S. 398, 403 (2006). You must evaluate the totality of the circumstances based on what the officer knew at the moment of entry. *United States v. MacDonald*, 916 F.2d 766, 769 (2d Cir. 1990).

### D.  <u>What Counts as a City Policy, Custom, or Practice</u>

A City may be liable under § 1983 if Plaintiffs prove that the constitutional violation was caused by:

1. **A formal policy** officially adopted by the City; or

2. **A practice or custom** that is so persistent, widespread, and well-settled that it has the force of law; or

3. **A decision or action attributable to the City**, meaning that the challenged conduct was caused by the City's own choices, including its training, supervision, or tolerance of a practice that results in constitutional violations.

*Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 690–91 (1978); *Connick v. Thompson*, 563 U.S. 51, 60 (2011); *Torraco v. Port Auth. of N.Y. & N.J.*, 615 F.3d 129, 140 (2d Cir. 2010); *Matusick v. Erie Cnty. Water Auth.*, 757 F.3d 31, 61–62 (2d Cir. 2014).

A practice may constitute a City custom if it is common and repeated, is tolerated or not stopped by supervisors, and reflects how officers are trained or expected to act. A single incident can support City liability if Plaintiffs prove it occurred because of a City policy or a widespread City practice that effectively authorized the conduct.

You do **not** need to find that a particular named individual policymaker personally made the policy choice. The question is whether the policy, custom, or practice was attributable to the City itself and caused the constitutional violation.

### E.  Plaintiffs' Theory: "Backtracking" as a City Policy / Custom

Plaintiffs contend that the City maintained a policy/custom/practice of unlawful "backtracking," meaning that officers were trained, expected, or permitted to enter residential curtilage—including fenced backyards—to retrace a suspect's route and look for discarded contraband or evidence, without requiring the

In deciding whether such a City policy/custom existed, you may consider all relevant evidence, including deposition testimony, trial testimony and other evidence about the City's training and supervision, deposition and trial testimony about how officers understood and described their practices, evidence about what supervisors permitted or encouraged, evidence about whether such entries occurred routinely and without discipline or corrective action, and the

28

City and RPD's written policies and training materials, or lack of policies and training materials, at the time of the incident and any subsequently issued policies or training materials.

If you find that the City failed to train its officers regarding the proper legal standard for entering the curtilage to a property, i.e., that it trained its officers that they could enter a property to "backtrack" without needing (a) probable cause and (2) exigent circumstances, then you must find that the City had a policy/custom/practice for purposes of § 1983. **OR**

If you find the City maintained an unlawful unwritten policy of requiring or permitting its officers to enter the curtilage to a property to "backtrack" without needing (a) probable cause and (2) exigent circumstances, then you must find that the City had a policy/custom/practice for purposes of § 1983. **OR**

If you find the City maintained a persistent and widespread practice of authorizing or tolerating warrantless entries into curtilage for "backtracking" purposes—without (a) probable cause and (2) exigent circumstances—then you must find that the City had a policy/custom/practice for purposes of § 1983.

### 1.  **Moving Force / Causation**

Plaintiffs must prove that the City's backtracking policy/custom/practice was the moving force behind Officer Algarin's unconstitutional entry. This means Plaintiffs must prove that the policy/custom/practice directly caused the entry, and that the entry occurred because of the City's policy/custom/practice rather than solely because of a personal decision by the officer unrelated to City practice.

If you find that the City's policy/custom/practice of backtracking caused Officer Algarin to enter Plaintiffs' curtilage without a warrant and without a valid exception to the warrant requirement, then this element is satisfied.

### 2. **Verdict**

If Plaintiffs prove by a preponderance of the evidence:

(1) a Fourth Amendment violation;

(2) a City policy/custom/practice of backtracking that trained, authorized or tolerated warrantless entries into curtilage without (a) probable cause and (2) exigent circumstances; and

(3) that the City policy/custom/practice was the moving force behind Officer Algarin's unconstitutional entry,

then your verdict must be for Plaintiffs and against the City on this claim.

If Plaintiffs fail to prove any one of these elements, then your verdict must be for the City.

III. **MODIFIED INSTRUCTION NO. 8: MUNICIPAL LIABILITY – FAILURE TO TRAIN / UNCONSTITUTIONAL POLICY OR CUSTOM REGARDING USE OF LETHAL FORCE AGAINST DOGS (Against the City of Rochester) (42 U.S.C. § 1983 – Fourth Amendment)**

### A. Overview and Elements Plaintiffs Must Prove

Plaintiffs Charles and Leona Dempsey claim that the City of Rochester is liable under 42 U.S.C. § 1983 for the shooting death of their dog, Tesla, because the City maintained an unconstitutional policy, custom, or practice regarding dog encounters and/or failed to train or supervise Rochester Police Department officers regarding safe, non-lethal handling of dog encounters.

To succeed on this municipal-liability claim, Plaintiffs must prove by a preponderance of the evidence each of the following elements:

1. **Underlying constitutional violation:** that Officer Javier Algarin violated Plaintiffs' Fourth Amendment rights by unreasonably seizing Tesla when he shot and killed her;

2. **Municipal policy, custom, or deliberate indifference:** that the violation was caused by (a) a City policy, custom, or practice, and/or (b) the City's failure to train or supervise officers in a manner that amounted to deliberate indifference to constitutional rights; and

3. **Moving force / causation:** that the City's policy, custom, practice, or deliberately indifferent failure to train or supervise was the "moving force" behind the constitutional violation—meaning it directly caused the violation.

Municipal liability under § 1983 is not automatic. The City is not liable simply because it employed the officer. Plaintiffs must prove that a City policy, custom, or deliberately indifferent failure to train or supervise caused the constitutional violation.

## B.  **Fourth Amendment Standard – Seizure of a Dog**

A dog is personal property. Killing a companion dog is a "seizure" under the Fourth Amendment.

The Fourth Amendment requires that the seizure be objectively reasonable. In deciding whether Officer Algarin's use of deadly force against Tesla was reasonable, you must consider the totality of the circumstances and balance (1) the nature and quality of the intrusion on Plaintiffs' Fourth Amendment interests against (2) the governmental interests asserted to justify the intrusion, including officer safety.

Whether the seizure of Tesla was unreasonable is a fact-intensive determination for you to decide.

## C.  **Municipal Liability – What Counts as a Policy, Custom, or Practice**

Plaintiffs may prove a City policy, custom, or practice in more than one way. A municipality may be liable if Plaintiffs prove that the constitutional violation was caused by:

1. A **formal policy** officially adopted by the City;

2. An action or decision of an official with final policymaking authority;

3. A **persistent and widespread practice** that, although not written, is so common and well-settled that it has the force of law; or

4. A **failure to train or supervise** that amounts to deliberate indifference to constitutional rights.

Plaintiffs are not required to identify or name a specific individual City policymaker within the Rochester Police Department. For purposes of a deliberate-indifference-to-training claim, the police department itself may serve as the municipal policymaker.

### D.  Failure to Train or Supervise – Deliberate Indifference

Plaintiffs may establish municipal liability by proving that the City failed to train or supervise its officers regarding dog encounters in a way that amounted to "deliberate indifference" to constitutional rights.

To prove deliberate indifference, Plaintiffs must prove by a preponderance of the evidence that:

1. City policymakers knew to a moral certainty that officers would confront dog encounters in the course of police work;

2. The situation presented officers with difficult choices that training or supervision would make less difficult, or there was a history of mishandling dog encounters;

3. Wrong choices in dog encounters would frequently lead to constitutional violations; and

4. Plaintiffs have identified a specific deficiency in the City's training or supervision program and proved that this deficiency was closely related to the injury and actually caused the constitutional violation.

In deciding whether the City was deliberately indifferent, you may consider whether the need for training or supervision was so obvious that failure to provide it was likely to result in constitutional violations.

### E.  Evidence Relevant to Deliberate Indifference and Policy or Custom

In  deciding  whether  Plaintiffs  have  proved  a  City  policy,  custom,  or  deliberate-indifference-to-training/supervision/discipline  failure,  you  may  consider  all  of  the  evidence presented  at  trial.  Evidence  you  may  consider  includes,  but  is  not  limited  to,  the  following categories:

- **Frequency of dog shootings and outcomes.** You may consider evidence regarding the number of times Rochester Police Department officers shot at dogs, including evidence of the number of dogs shot and killed over specified time periods, as relevant to whether there was a widespread practice and whether the City had notice of recurring issues requiring training, supervision, discipline, or a change in policy.

- **Written directives and training guidance regarding non-lethal alternatives.** You may consider evidence regarding City directives, training materials, or Department policies addressing whether and when officers should use non-lethal methods—such as TASERs—during dog encounters, including evidence that TASER-certified officers were instructed not to use TASERs on dogs, and to use firearms instead.

- **Content, duration, and quality of training.** You may consider evidence about the nature and extent of dog-encounter training provided by the City, including evidence regarding whether training included hands-on instruction, scenario-based training, or instruction on non-lethal techniques, as well as evidence regarding the length and substance of any in-service training.

- **Officer testimony regarding training and customary practices.** You may consider evidence regarding what officers were taught or expected to do when encountering dogs, including evidence about whether officers were instructed to shoot dogs that ran toward

them, whether officers reported little or no training on non-lethal options, and whether such conduct was described as routine.

- **Supervision, investigation, discipline, and retraining following dog shootings.** You may consider evidence regarding whether dog-shooting incidents were meaningfully reviewed; whether the Professional Standards Section reviewed dog-shooting firearm-discharge events; whether officers were disciplined or retrained following dog shootings; and the extent to which supervisors reviewed their own officers' conduct without independent review.

- **Comparative evidence regarding training feasibility and effectiveness.** You may consider evidence about other police departments' dog-encounter training programs and their effects, if admitted, as relevant to whether the need for training was obvious and whether the City's failure to provide comparable training supports an inference of deliberate indifference.

You may also consider evidence concerning whether officers planned for the presence of dogs and whether training and planning regarding non-lethal methods was lacking. However, the Constitution does not require that officers always use non-lethal means, and a lack of planning or training does not automatically prove that the shooting of a dog was unreasonable as a matter of law. Instead, you must decide whether, under the totality of the circumstances, the seizure was unreasonable, and whether a City policy, custom, or deliberately indifferent failure to train or supervise caused that constitutional violation.

**F.  <u>Moving Force / Causation</u>**

If you find that Plaintiffs have proved an underlying Fourth Amendment violation, you must then decide whether Plaintiffs have proved that a City policy, custom, or deliberately indifferent failure to train or supervise was the moving force behind that violation.

Plaintiffs must prove by a preponderance of the evidence that the policy, custom, or training/supervision deficiency directly caused Officer Algarin's unconstitutional conduct—meaning that the constitutional violation occurred because of the policy, custom, or deliberately indifferent failure, and would not have occurred absent it.

**G.  <u>Verdict</u>**

If Plaintiffs prove by a preponderance of the evidence (1) an underlying Fourth Amendment violation in the seizure of Tesla, and (2) that the violation was caused by a City policy, custom, or deliberately indifferent failure to train or supervise that was the moving force behind the violation, then your verdict must be for Plaintiffs on this municipal-liability claim.

If Plaintiffs fail to prove any of these elements, then your verdict must be for the City of Rochester on this claim.

## IV. <u>MODIFIED INSTRUCTION NO. 9: GENERAL DAMAGES PRINCIPLES</u>

If you find that Plaintiffs have proven any claim against any Defendant by a preponderance of the evidence, then you must consider the issue of damages. The fact that I am giving you instructions on damages should not be considered as an indication of any view of mine on what your verdict should be. Rather, these instructions are given only so that you will have them in the event that you should find in favor of Plaintiffs on the question of liability.

There are two types of damages that you may consider: compensatory damages **and** punitive damages**.** I will discuss each of these in turn.

### A. <u>Compensatory Damages</u>

If you find either Plaintiff on the issue of liability for any of their claims under federal or state law, then you must award compensatory damages, that is, a sum of money that you believe will fairly and reasonably compensate each Plaintiff for any injury you find that Plaintiff actually sustained as a direct consequence of the Defendant's unlawful conduct.

Under § 1983, compensatory damages are intended to fairly and reasonably compensate Plaintiffs for the actual injuries you find were proximately caused by the constitutional violation. Plaintiffs may recover damages for the natural and reasonably foreseeable consequences of the constitutional violation. *Cty. of Los Angeles, Calif. v. Mendez*, 581 U.S. 420, 428–29 (2017) (plaintiffs may "recover damages that are proximately caused by any Fourth Amendment violation"); *Carey v. Piphus*, 435 U.S. 247, 264 (1978); *Memphis Cmty. Sch. Dist. v. Stachura*, 477 U.S. 299, 307–08 (1986).

Similarly, under New York law, compensatory damages are intended to fairly and reasonably compensate Plaintiffs for the injuries you find were proximately caused by the Defendant's wrongful conduct. Under New York Law, you must "assess the dog's actual value to the owner in order to make the owner whole", including, but not limited to, "psychological trauma" and "the loss of companionship and protective value", as well as the market value of Tesla. See *Brousseau v. Rosenthal*, 110 Misc. 2d 1054, 1055-1058 (N.Y. Civ. Ct. 1980). A defendant is responsible for the natural and reasonably foreseeable consequences of that wrongful conduct.

You may award compensatory damages only for those injuries that you find Plaintiffs have proven by a preponderance of the evidence. Moreover, you may award compensatory damages only for those injuries that you find Plaintiffs have proven by a preponderance of the evidence to have been proximately caused by the Defendant's unlawful conduct. That is, you may not award compensatory damages for any injury suffered by Plaintiffs from any other cause.

A Defendant is responsible for all injuries that are the natural and foreseeable consequence of the unlawful conduct, and also for any aggravation of a pre-existing emotional or psychological condition, if proven.

Compensatory damages must not be based on speculation or sympathy. They must be based on the evidence presented at trial, and only on that evidence, and the reasonable inferences you draw from that evidence.

Compensatory damages may include, to the extent proven:

- emotional distress, anxiety, trauma, post-traumatic stress disorder (PTSD), and other psychological injury;

38

- "emotional distress resulting from witnessing [Tesla's] death and fear for [their] own safety". *DeBlase v. Hill*, 239 N.Y.S.3d 770, 784–85, 792–94, 798 (Sup. Ct. Kings Cnty. 2025). That is, emotional distress arising from (a) exposure to danger and (b) contemporaneous observation of Tesla being shot and killed. *Id*. at 792–94.

- Tesla's loss of companionship and protective value; *Brousseau v. Rosenthal*, 110 Misc. 2d 1054, 1055-1058 (N.Y. Civ. Ct. 1980); *Van Patten v. City of Binghamton,* 137 F. Supp. 2d 98, 104 (N.D.N.Y. 2001) ("Pets are capable of providing invaluable love, friendship, and companionship—things that other types of personal property simply cannot provide.")

- medical and psychological treatment expenses (including therapy, counseling, medication, and hospitalization);

- Economic loss, including the "intrinsic value" of the dog, any post-incident veterinary costs, burial/cremation/memorialization costs. *DeBlase v. Hill*, 239 N.Y.S.3d at 798 (Sup. Ct. Kings Cnty. 2025).

- Loss of enjoyment of life.

In determining damages for emotional or psychological injury, no physical injury is required. A plaintiff may recover damages for emotional distress actually caused by the constitutional violation. *Carey v. Piphus*, 435 U.S. 247, 264 (1978). Compensatory damages must be based on actual injury, which may include mental anguish, humiliation, and emotional distress, so long as such injuries are proven. *Memphis Cmty. Sch. Dist. v. Stachura*, 477 U.S. 299, 307 (1986).

There is no exact standard for setting damages for emotional distress or psychological injury. I cannot give you a precise formula for determining the dollar value of pain, suffering, or emotional harm. You must use your judgment, common sense, and experience to determine an amount that will fairly and reasonably compensate each Plaintiff, based on the evidence you have heard.

### B.  <u>Punitive Damages</u>

I will provide separate specific instructions on punitive damages.

**V. <u>MODIFIED INSTRUCTION NO. 9A: DAMAGES FOR UNLAWFUL ENTRY / UNREASONABLE SEARCH (CURTILAGE) (42 U.S.C. § 1983 – Fourth Amendment)</u>**

If you find that Plaintiffs have proven their § 1983 claim for unlawful entry / unreasonable search of the curtilage in violation of the Fourth Amendment, then you must award compensatory damages to Plaintiffs in an amount that fairly and reasonably compensates Plaintiffs for the actual injuries you find they sustained as a result of that constitutional violation.

In this case, Plaintiffs claim that the unlawful entry into the Dempsey backyard foreseeably led to additional harms, including Algarin shooting and killing Tesla in front of Charles Dempsey, and Algarin's seizure and assault of Charles Dempsey when he pointed the gun and pepper spray at Charles Dempsey. Therefore, if you find that the unlawful entry occurred, and that Algarin's shooting of Tesla in front of Charles Dempsey and Algarin's seizure and assault of Charles Dempsey were reasonably foreseeable consequences of that unlawful entry, you may include damages arising from Algarin's shooting of Tesla in front of Charles Dempsey and Tesla's death, and from Algarin seizing and assaulting Charles Dempsey when he pointed the gun and pepper spray at Charles Dempsey, as part of Plaintiffs' compensatory damages for the unlawful entry claim, in addition to any other damages you find were proximately caused by the unlawful entry.

Compensatory damages for the unlawful entry claim may include, to the extent proven: interference with Plaintiffs' use and enjoyment of their home; damages caused by discomfort, inconvenience, fear, and emotional distress resulting from the invasion; emotional distress, anxiety, trauma, post-traumatic stress disorder (PTSD), and other psychological injury, including emotional distress resulting from witnessing Tesla's death and fear for Plaintiffs' own safety where that distress arose from (a) exposure to danger and (b) contemporaneous observation of Tesla being

shot and killed, *DeBlase v. Hill*, 239 N.Y.S.3d 770, 784–85, 792–94, 798 (Sup. Ct. Kings Cnty. 2025); Tesla's property value and related economic losses, including the dog's intrinsic value, any post-incident veterinary costs, and reasonable burial, cremation, or memorialization expenses, *id.* at 798; Tesla's loss of companionship and protective value, *Brousseau v. Rosenthal*, 110 Misc. 2d 1054, 1055–58 (N.Y. Civ. Ct. 1980); see also *Van Patten v. City of Binghamton*, 137 F. Supp. 2d 98, 104 (N.D.N.Y. 2001) ("Pets are capable of providing invaluable love, friendship, and companionship—things that other types of personal property simply cannot provide."); medical and psychological treatment expenses (including therapy, counseling, medication, and hospitalization); loss of enjoyment of life; and any other losses that you find were a direct and reasonably foreseeable result of the unlawful entry. *Carey v. Piphus*, 435 U.S. 247, 264 (1978); *Memphis Cmty. Sch. Dist. v. Stachura*, 477 U.S. 299, 307–08 (1986).

**VI. <u>MODIFIED INSTRUCTION NO. 9B: DAMAGES FOR CONSTITUTIONAL VIOLATIONS INVOLVING TESLA (DOG SEIZURE)</u>**

If you find that Defendant Algarin unlawfully seized Tesla by shooting and killing her in violation of the Fourth Amendment, then you must award compensatory damages to Plaintiffs in an amount that fairly and reasonably compensates Plaintiffs for the actual injuries you find they sustained as a result of that constitutional violation.

Many people regard a companion dog as a member of the family; but, under the Fourth Amendment the dog is treated as property, and your damages award must be based on the actual injuries proven to have been caused by the unconstitutional seizure. However, the measure of damages for a constitutional tort under § 1983 is not limited to the market value of the property. Compensatory damages may include proven emotional distress and other actual injuries caused by the constitutional violation. *Carey v. Piphus*, 435 U.S. 247, 264 (1978); *Memphis Cmty. Sch. Dist. v. Stachura*, 477 U.S. 299, 307–08 (1986).

Compensatory damages for the unlawful seizure claim related to Defendant Algarin shooting and killing Tesla may include, to the extent proven: emotional distress, anxiety, trauma, post-traumatic stress disorder (PTSD), and other psychological injury, including emotional distress resulting from witnessing Tesla's death and fear for Plaintiffs' own safety where that distress arose from (a) exposure to danger and (b) contemporaneous observation of Tesla being shot and killed, *DeBlase v. Hill*, 239 N.Y.S.3d 770, 784–85, 792–94, 798 (Sup. Ct. Kings Cnty. 2025); Tesla's property value and related economic losses, including the dog's intrinsic value, any post-incident veterinary costs, and reasonable burial, cremation, or memorialization expenses, *id.* at 798; Tesla's loss of companionship and protective value, *Brousseau v. Rosenthal*, 110 Misc. 2d 1054, 1055–58 (N.Y. Civ. Ct. 1980); see also *Van Patten v. City of Binghamton*, 137 F. Supp. 2d 98, 104

(N.D.N.Y. 2001) ("Pets are capable of providing invaluable love, friendship, and companionship—things that other types of personal property simply cannot provide."); medical and psychological treatment expenses (including therapy, counseling, medication, and hospitalization); loss of enjoyment of life; and any other losses that you find were a direct and reasonably foreseeable result of the unlawful entry. *Carey v. Piphus*, 435 U.S. 247, 264 (1978); *Memphis Cmty. Sch. Dist. v. Stachura*, 477 U.S. 299, 307–08 (1986).

## VII.    MODIFIED INSTRUCTION NO. 9C: DAMAGES FOR UNLAWFUL SEIZURE OF CHARLES DEMPSEY (FOURTH AMENDMENT – § 1983)(Charles Dempsey v. Officer Javier Algarin)

If you find that Defendant Javier Algarin unlawfully seized Charles Dempsey in violation of the Fourth Amendment, then you must award compensatory damages to Charles Dempsey, then you must award compensatory damages to Charles Dempsey in an amount that fairly and reasonably compensates him for the actual injuries you find he sustained as a result of that constitutional violation.

In this case, Charles Dempsey claims that Officer Algarin seized him by a show of authority, including pointing a firearm, issuing commands, and threatening to deploy pepper spray.

Compensatory damages for an unlawful seizure may include, to the extent proven: emotional distress and psychological injury (including fear, anxiety, humiliation, trauma, and loss of a sense of safety); physical consequences resulting from emotional distress; medical or psychological treatment expenses (including counseling, therapy, psychiatric care, medication, or hospitalization); loss of enjoyment of life; and any other losses that you find were a direct and reasonably foreseeable result of the unlawful seizure. *Carey*, 435 U.S. at 264; *Stachura*, 477 U.S. at 307–08.

**VIII.    MODIFIED INSTRUCTION NO. 9D: DAMAGES FOR FAILURE TO INTERVENE (FOURTH AMENDMENT – § 1983) (Against Officer Adam Gorman Only)**

If you find that Defendant Adam Gorman is liable for failure to intervene to prevent Defendant Algarin's unlawful entry into the Dempsey backyard in violation of the Fourth Amendment, then you must award compensatory damages to Plaintiffs in an amount that fairly and reasonably compensates Plaintiffs for the actual injuries you find they sustained as a result of that constitutional violation.

In this case, the failure-to-intervene claim is limited to Officer Gorman's alleged failure to intervene to prevent Officer Algarin's unlawful entry into the Dempsey backyard. Plaintiffs claim that this unlawful entry foreseeably led to additional harms, including Algarin shooting and killing Tesla and assaulting Charles Dempsey. Therefore, if you find that Defendant Gorman is liable for failure to intervene and that those harms were reasonably foreseeable consequences of the unlawful entry that Officer Gorman failed to prevent, you may include those harms— including damages arising from Tesla's death—as part of Plaintiffs' compensatory damages on this claim, in addition to any other damages you find were proximately caused by the failure to intervene.

Compensatory damages for failure to intervene may include, to the extent proven: interference with Plaintiffs' use and enjoyment of their home; damages caused by discomfort, inconvenience, fear, and emotional distress resulting from the invasion; emotional distress, anxiety, trauma, post-traumatic stress disorder (PTSD), and other psychological injury, including emotional distress resulting from witnessing Tesla's death and fear for Plaintiffs' own safety where that distress arose from (a) exposure to danger and (b) contemporaneous observation of Tesla being shot and killed, *DeBlase v. Hill*, 239 N.Y.S.3d 770, 784–85, 792–94, 798 (Sup. Ct. Kings Cnty.

2025); Tesla's property value and related economic losses, including the dog's intrinsic value, any post-incident veterinary costs, and reasonable burial, cremation, or memorialization expenses, *id.* at 798; Tesla's loss of companionship and protective value, *Brousseau v. Rosenthal*, 110 Misc. 2d 1054, 1055–58 (N.Y. Civ. Ct. 1980); see also *Van Patten v. City of Binghamton*, 137 F. Supp. 2d 98, 104 (N.D.N.Y. 2001) ("Pets are capable of providing invaluable love, friendship, and companionship—things that other types of personal property simply cannot provide."); medical and psychological treatment expenses (including therapy, counseling, medication, and hospitalization); loss of enjoyment of life; and any other losses that you find were a direct and reasonably foreseeable result of the unlawful entry. *Carey v. Piphus*, 435 U.S. 247, 264 (1978); *Memphis Cmty. Sch. Dist. v. Stachura*, 477 U.S. 299, 307–08 (1986).

**IX.** **MODIFIED INSTRUCTION NO. 9E: DAMAGES FOR TRESPASS (STATE LAW) (Against Officers Algarin and Gorman; City of Rochester via Respondeat Superior)**

If you find that Defendants trespassed in Plaintiffs' backyard, then you must award compensatory damages to Plaintiffs in an amount that fairly and reasonably compensates Plaintiffs for the actual injuries you find they sustained as a result of the trespass.

Under New York law, Plaintiffs may recover compensatory damages for all injuries that you find were proximately caused by the trespass. A defendant is responsible for the natural and reasonably foreseeable consequences of a wrongful entry. This includes not only harms that occur at the moment of the trespass, but also harms that occur during the events set in motion by the trespass, so long as you find those harms were a reasonably foreseeable consequence of the trespass. *Volunteer Fire Ass'n of Tappan, Inc. v. County of Rockland*, 101 A.D.3d 853, 856, 957 N.Y.S.2d 54, 58 (2d Dep't 2012) (holding that "consequential damages" are recoverable for trespass, including damages caused by discomfort and inconvenience).

In this case, Plaintiffs claim that Defendants' trespass into the Dempsey backyard foreseeably led to additional harms, including Algarin shooting and killing Tesla and Algarin's assault of Charles Dempsey. Therefore, if you find that the trespass occurred and that the shooting of Tesla was a reasonably foreseeable consequence of that trespass, you must include damages arising from Tesla's death as part of Plaintiffs' compensatory damages for the trespass claim, in addition to any other damages you find were proximately caused by the trespass.

Compensatory damages for trespass may include, to the extent proven: interference with Plaintiffs' use and enjoyment of their home; damages caused by discomfort, inconvenience, fear, and emotional distress resulting from the invasion; emotional distress, anxiety, trauma, post-

traumatic stress disorder (PTSD), and other psychological injury, including emotional distress resulting from witnessing Tesla's death and fear for Plaintiffs' own safety where that distress arose from (a) exposure to danger and (b) contemporaneous observation of Tesla being shot and killed, *DeBlase v. Hill*, 239 N.Y.S.3d 770, 784–85, 792–94, 798 (Sup. Ct. Kings Cnty. 2025); Tesla's property value and related economic losses, including the dog's intrinsic value, any post-incident veterinary costs, and reasonable burial, cremation, or memorialization expenses, *id.* at 798; Tesla's loss of companionship and protective value, *Brousseau v. Rosenthal*, 110 Misc. 2d 1054, 1055–58 (N.Y. Civ. Ct. 1980); see also *Van Patten v. City of Binghamton*, 137 F. Supp. 2d 98, 104 (N.D.N.Y. 2001) ("Pets are capable of providing invaluable love, friendship, and companionship—things that other types of personal property simply cannot provide."); medical and psychological treatment expenses (including therapy, counseling, medication, and hospitalization); loss of enjoyment of life.

X. **REVISED MODIFIED INSTRUCTION NO. 9F: DAMAGES FOR ASSAULT (STATE LAW) (Charles Dempsey v. Officer Algarin; City of Rochester via Respondeat Superior)**

If you find that Defendant Algarin committed an assault against Charles Dempsey, then you must award compensatory damages to Charles Dempsey in an amount that fairly and reasonably compensates him for the actual injuries you find he sustained as a result of the assault.

Under New York law, Charles Dempsey may recover compensatory damages for all injuries that you find were proximately caused by the assault. A defendant is responsible for the natural and reasonably foreseeable consequences of an assault. This includes not only harms that occur at the moment of the assault, but also harms that occur during the events set in motion by the assault, so long as you find those harms were a reasonably foreseeable consequence of the assault.

Compensatory damages for assault may include, to the extent proven: fear, fright, and emotional distress, including the fear and apprehension of imminent physical harm; humiliation and indignity; psychological injury (including anxiety and trauma); physical consequences resulting from emotional distress; medical or psychological treatment expenses; loss of enjoyment of life; and any other losses that you find were a direct and reasonably foreseeable result of the assault. *Bert v. Port Auth. of N.Y. & N.J.*, 166 A.D.2d 351, 352 (1st Dep't 1990) (recognizing humiliation as a significant aspect of damage claims); *Young v. Village of Potsdam*, 297 N.Y. 712 (1947) (damages for humiliation recoverable in assault); *Beck v. Libraro*, 220 A.D. 547 (2d Dep't 1927) (damages for fright recoverable as natural and probable consequence of assault); *Williams v. Underhill*, 63 A.D. 223 (1st Dep't 1901) (same); *O'Donnell v. K-Mart Corp.*, 100 A.D.2d 488, 492 (4th Dep't 1984) (same).

## XI. MODIFIED INSTRUCTION NO. 10: DAMAGES FOR PLAINTIFF CHARLES DEMPSEY

If you find for Charles Dempsey on any claim, you must award him compensatory damages in an amount that fairly and reasonably compensates him for the injuries that you find were proximately caused by the defendant's unlawful conduct, consistent with the general damages principles I have already given you.

In determining Charles Dempsey's compensatory damages, you may consider the following categories of damages, to the extent proven:

1. **Emotional Distress and Psychological Harm.** You may award damages for emotional distress and psychological injury that you find Charles Dempsey actually suffered as a result of the defendants' unlawful conduct. This may include, depending on the claim(s) you find proven, fear for his life or safety; fear caused by having a gun pointed at him or being threatened with pepper spray; anxiety; humiliation; shock; trauma; anger; sleep disruption; distress from the invasion of the curtilage; grief and psychological trauma from witnessing Defendant Algarin shoot and kill Tesla; and depression, post-traumatic stress disorder (PTSD), and other psychological injury. You may also consider emotional distress resulting from fear for Charles Dempsey's own safety while contemporaneously witnessing Tesla being shot and killed.

2. **Medical and Psychological Treatment Expenses.** If you find that Charles required therapy, counseling, psychiatry, or medication, and that this need was caused or aggravated by defendants' unlawful conduct, he may recover the reasonable cost of such treatment.

3. **Loss of Tesla.** If you find that Charles Dempsey is entitled to recover for Tesla's death under any claim, you may award damages for Tesla-related losses, including Tesla's

property value and intrinsic value to Charles Dempsey, any post-incident veterinary costs, and any reasonable expenses incurred as a result of Tesla's death, including burial, cremation, or memorialization costs, if proven. You may also consider the loss of Tesla's companionship and protective value to Charles Dempsey.

4. **Loss of Enjoyment of Life / Loss of Sense of Security.** You may award damages for any loss of enjoyment of life you find Charles Dempsey experienced as a result of defendants' unlawful conduct, including any lasting loss of a sense of safety and security in his home or in his yard.

5. **Trespass Damages.** For trespass to land under New York law, Charles may recover damages for interference with enjoyment of his home, emotional distress caused by the invasion, and any resulting harm—including Algarin shooting and killing Tesla and assaulting Charles Dempsey—if proven.

6. **Future Damages.** If you find that Charles is reasonably likely to suffer future emotional distress, psychological injury, or require future treatment as a result of defendants' unlawful conduct, you may award future damages in an amount that fairly and reasonably compensates him, based on the evidence.

You may award damages only for injuries you find were actually sustained and proximately caused by the unlawful conduct, and only in amounts supported by the evidence.

XII.     **MODIFIED INSTRUCTION NO. 11: DAMAGES FOR PLAINTIFF LEONA DEMPSEY**

If you find for Leona Dempsey on any claim, you must award her compensatory damages in an amount that fairly and reasonably compensates her for the injuries that you find were proximately caused by the defendant's unlawful conduct, consistent with the general damages principles I have already given you.

In determining Leona Dempsey's compensatory damages, you may consider the following categories of damages, to the extent proven:

1. **Emotional Distress and Psychological Harm.** You may award damages for emotional distress and psychological injury that you find Leona actually suffered as a result of the defendants' unlawful conduct. This may include, depending on the claim(s) you find proven, emotional distress from the unlawful entry into the curtilage; trauma, grief, and psychological injury arising from Tesla's unconstitutional killing; fear caused by officers' presence and actions, including witnessing Tesla being shot and killed and witnessing or learning that a gun and pepper spray were pointed at her father, Charles Dempsey; and emotional distress resulting from fear for her own safety while contemporaneously witnessing Tesla being shot and killed. You may also award damages for lasting psychological harm including anxiety, depression, post-traumatic stress disorder (PTSD) symptoms, difficulty sleeping, panic attacks, flashbacks or intrusive recollections, inability to feel safe in her home, and any other mental or emotional suffering you find was caused or aggravated by defendants' unlawful conduct.

2. **Psychological Treatment and Therapy.** If you find that defendants' unlawful conduct caused or substantially contributed to Leona's need for psychotherapy, psychiatry,

medication, counseling, crisis stabilization, outpatient treatment, or inpatient

hospitalization, then you may award damages for the reasonable costs of such treatment,

if proven. You may also award any damages associated with additional trauma or harm

caused by the inpatient hospitalization itself.

3. **Inpatient Hospitalization.** If you find, by a preponderance of the evidence, that

   defendants' unlawful conduct proximately caused Leona's hospitalization, or was a

   substantial factor in aggravating her mental health such that inpatient treatment became

   reasonably necessary, then Leona is entitled to recover all damages associated with that

   hospitalization. This may include medical and facility costs, medication costs,

   psychological trauma associated with hospitalization, loss of enjoyment of life during and

   after hospitalization, and all emotional suffering related to the need for such intensive

   treatment, if proven.

4. **Loss of Tesla:** If you find that Leona Dempsey is entitled to recover for Tesla's death

   under any claim, you may award damages for Tesla-related losses, including Tesla's

   property value and intrinsic value to Leona Dempsey, if proven. You may also consider

   the loss of Tesla's companionship and protective value to Leona Dempsey.

5. **Loss of Enjoyment of Life / Loss of Sense of Security**. You may award damages for

   any loss of enjoyment of life you find Leona Dempsey experienced as a result of

   defendants' unlawful conduct, including any lasting loss of a sense of safety and security

   in her home, her yard, or her daily life.

6. **Trespass-Related Harms (State Law)**. If you find Leona Dempsey has proven trespass,

   you may award damages for harms caused by the invasion of her property, including

interference with use and enjoyment of the home and yard, discomfort and inconvenience, and emotional distress caused by the invasion, if proven.

7. **Future Damages** If you find that Leona Dempsey is reasonably likely to suffer future emotional distress, psychological injury, or require future treatment as a result of defendants' unlawful conduct, you may award future damages in an amount that fairly and reasonably compensates her, based on the evidence.

You may award damages only for injuries you find were actually sustained and proximately caused by the unlawful conduct, and only in amounts supported by the evidence.

### XIII.    MODIFIED INSTRUCTION NO. 12: PUNITIVE DAMAGES (ALGARIN AND GORMAN ONLY) (Unlawful Entry and Search under 42 U.S.C. § 1983)

If you find that Plaintiffs have proven liability against Officer Javier Algarin or Officer Adam Gorman on any § 1983 claim, you must then decide whether Plaintiffs have also proven that punitive damages should be awarded against that officer. Punitive damages may be awarded only against individual defendants, not against the City of Rochester.

#### A.    Purpose of Punitive Damages

Punitive damages are not intended to compensate Plaintiffs. Instead, punitive damages are intended to punish a defendant for conduct that is particularly blameworthy and to deter that defendant and others from engaging in similar misconduct in the future. *Smith v. Wade*, 461 U.S. 30, 54 (1983).

#### B.    When Punitive Damages May Be Awarded

You may award punitive damages against an individual defendant only if Plaintiffs prove by a preponderance of the evidence that the defendant's conduct was:

- motivated by evil motive or intent**,** or
- involved reckless or callous indifference to Plaintiffs' federally protected rights.

"Punitive damages are available in a § 1983 action when the defendant's conduct is shown to be motivated by evil motive or intent, or when it involves reckless or callous indifference to the federally protected rights of others." *Edwards v. Cornell*, No. 3:13-CV-878 (WIG), 2017 WL 5719144, at *8 (D. Conn. Nov. 28, 2017) (quoting *Lee v. Edwards*, 101 F.3d 805, 808 (2d Cir. 1996)); See also *Smith*, 461 U.S. at 56 (punitive damages are permitted where the defendant's conduct is "motivated by evil motive or intent, or … involves reckless or callous indifference" to federal rights).

55

### C. <u>Definitions</u>

- **Evil motive or intent** means conduct done with ill will, spite, or an intent to harm.

- **Reckless or callous indifference** means that the defendant **knew, or should have known,** that his conduct created a substantial risk of violating Plaintiffs' federally protected rights, and he **consciously disregarded** that risk.

### D. <u>Application to This Case</u>

Plaintiffs claim that Officers Algarin and Gorman acted with reckless or callous indifference to Plaintiffs' federally protected rights when Officer Algarin entered the Dempsey backyard—curtilage—without a warrant, without consent, and without probable cause plus exigent circumstances, and when the officers engaged in related conduct during that incident. Plaintiffs claim that Algarin knew that he did not have probable cause or an emergency, and that Algarin had the time and opportunity to seek Mr. Dempsey's consent prior to entering his backyard, but that Algarin chose not to seek Mr. Dempsey's consent, and recklessly entered his backyard anyways, knowing this would violate Plaintiffs' Fourth Amendment Rights.

If you find that either Officer Algarin or Officer Gorman is liable for a constitutional violation, you may consider whether the violation was committed with the required state of mind for punitive damages. In making that decision, you may consider all the circumstances, including the nature of the officer's conduct, the degree of risk that the conduct would violate constitutional rights, and whether the conduct involved deliberate or reckless disregard of those rights.

### 3. <u>Amount of Punitive Damages</u>

If you decide to award punitive damages, the amount is within your sound discretion. The amount should be reasonable and proportionate to the seriousness of the defendant's misconduct and sufficient to accomplish the purposes of punishment and deterrence. *Smith*, 461 U.S. at 54.

### E.  Relationship to Compensatory Damages

If you award punitive damages, they are awarded in addition to any compensatory damages you award. See *Moreno v. Hughes*, 157 F. Supp. 3d 687, 689–92 (E.D. Mich. 2016) (recognizing punitive damages are available in § 1983 actions and are assessed by the fact finder based on the facts of the case).

## XIV.    MODIFIED INSTRUCTION NO. 13: PUNITIVE DAMAGES — NEW YORK STATE LAW (TRESPASS) (Against Officers Javier Algarin and Adam Gorman Only)

If you find that Plaintiffs have proven their state-law trespass claim against Officer Javier Algarin or Officer Adam Gorman, you must then decide whether Plaintiffs have also proven that punitive damages should be awarded against that officer under New York law.

Punitive damages may be awarded only against individual defendants, not against the City of Rochester.

### A.    Purpose of Punitive Damages (State Law)

Punitive damages are not intended to compensate Plaintiffs. Instead, punitive damages serve two purposes: (1) to punish a defendant for particularly egregious wrongdoing, and (2) to deter the defendant and others from engaging in similar conduct in the future.

Under New York law, punitive damages may be awarded in tort cases where the defendant's wrongdoing is intentional and deliberate and has a character of outrage. *Prozeralik v. Cap. Cities Commc'ns, Inc.*, 82 N.Y.2d 466, 479–80 (1993).

### B.    When Punitive Damages May Be Awarded for Trespass (State Law Standard)

Punitive damages are **not automatic** in a trespass case. Under New York law, to recover punitive damages for trespass to real property, Plaintiffs must prove that the defendant:

- acted with actual malice involving an intentional wrongdoing, **or**

- engaged in conduct that amounted to a wanton, willful, or reckless disregard of Plaintiffs' rights.

58

*West v. Hogan*, 88 A.D.3d 1247, 1250, 930 N.Y.S.2d 708, 711 (4th Dep't 2011).

### C.  <u>Application to This Case (Trespass)</u>

Plaintiffs claim that they are entitled to punitive damages against Officers Algarin and Gorman under New York law for trespass because the officers knowingly and intentionally entered the Dempsey backyard (curtilage) without permission and without legal justification**.**

In deciding whether Plaintiffs have proven that punitive damages should be awarded, you may consider all the circumstances, including whether the defendant's entry was knowing and intentional, whether the defendant acted in conscious disregard of Plaintiffs' rights to exclude others from their property, and whether the conduct was sufficiently willful, wanton, or malicious to warrant punishment and deterrence. See *West*, 88 A.D.3d at 1250, 930 N.Y.S.2d at 711.

### D.  <u>Burden of Proof</u>

Plaintiffs must prove the required standard for punitive damages under New York law by a preponderance of the evidence.

### E.  <u>Amount of Punitive Damages</u>

If you decide to award punitive damages, the amount is within your sound discretion. The amount must be reasonable and should bear a reasonable relation to the harm done and the flagrancy of the defendant's conduct. *West*, 88 A.D.3d at 1251, 930 N.Y.S.2d at 712.

## XV.     PROPOSED INSTRUCTION — RESPONDEAT SUPERIOR (STATE LAW ASSAULT AND TRESPASS)[2]

With respect to Plaintiffs' state law claims for assault and trespass, Charles and Leona Dempsey also seek to hold the City of Rochester responsible for the acts of Officers Algarin and Gorman.

Under New York law, an employer may be held liable for the torts of its employees committed within the scope of their employment. In this case, the City concedes that it is responsible for the acts of Officers Algarin and Gorman with respect to Plaintiffs' state law assault and trespass claims.

Therefore, if you find that Plaintiffs have proven their state law assault claim or state law trespass claim against either Officer Algarin or Officer Gorman, then you must also find that Plaintiffs have proven that same claim against the City of Rochester.

Dated: New York, New York            Respectfully Submitted,
         December 29, 2025              ROTH & ROTH LLP

                                  By: _____~//s//~_____
                                      Elliot Dolby Shields, Esq.
                                      *Counsel for Plaintiff*
                                      192 Lexington Ave, Suite 802
                                      New York, New York 10016
                                      Ph: (212) 425-1020
To:    All counsel of record (via ECF)

---

[2] Plaintiff requests that this additional instruction be given after the instructions on the State Law claims.